IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GLOBAL IMPACT MINISTRIES, INC., )
JUSTIN REEDER, CARL UBINAS,       )
JASON OESTERREICH, ISAIAH          )
BURNER, ANDRE GONZALEZ, LEROY   )
STOKES, JR., RICHARD WHITTIER,    )
and JON MCATEE,                          )
                                                 )
          Plaintiffs,                        )
                                                 )
     v.                                          )          1:20CV329
                                                 )
CITY OF GREENSBORO,                 )
                                                 )
          Defendant.                       )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Before this court is a Motion to Dismiss Amended Complaint
pursuant to Federal Rules of Civil Procedure 12(b)(1) and
12(b)(6) filed by Defendant City of Greensboro ("City").
(Doc. 41.) For the reasons that follow, this court will grant in
part and deny in part City's Motion. This court will dismiss
Plaintiffs' free exercise of religion claim (Claim One). This
court will decline to dismiss Plaintiffs' freedom of speech
claim (Claim Two), procedural due process claim (Claim Three),
freedom of association claim (Claim Four), equal protection
claim (Claim Five), and Fourth Amendment claims (Claims Six,
Seven, and Eight).

# I.   FACTUAL AND PROCEDURAL BACKGROUND

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (internal quotation marks omitted) (quoting King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016)). The court may also consider documents "attached to the complaint as exhibits." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). The facts, taken in the light most favorable to Plaintiffs, are as follows.

## A.   Factual Background

### 1.   The Parties

Plaintiff Global Impact Ministries, Inc. d/b/a Love Life ("Global Impact") is a nonprofit, charitable, and religious organization that offers spiritual and emotional counseling for women considering abortion. (Am. Compl. (Doc. 39) ¶¶ 1, 16.)[1] Global Impact partners with churches "[t]o close the gaps" in the availability of social services by providing women facing

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

unplanned pregnancies with post-abortive counseling, parenting
mentorship, and adoption-related services. (Id. ¶¶ 18-22.) One
of Global Impact's services is its Christian sidewalk ministry,
where volunteers participate in silent prayer walks outside
abortion clinics, and Christian sidewalk ministers are available
to speak with women considering abortion. (Id. ¶¶ 22-26.)
Plaintiffs Justin Reeder, Carl Ubinas, Jason Oesterreich, and
Isaiah Burner work for Global Impact. (Id. ¶ 49.) Andre
Gonzalez, Leroy Stokes, Jr., Richard Whittier, and Jon McAtee
volunteer with Global Impact. (Id. ¶ 62.)

Defendant City of Greensboro is a municipality organized
under the laws of the State of North Carolina. (Id. ¶ 10.)

### 2.    **The Stay-at-Home Order**

On March 20, 2020, in response to the COVID-19 pandemic,
Global Impact ended all organized prayer walks and told church
volunteers that anyone who individually wanted to participate in
a prayer walk must abide by all Centers for Disease Control
("CDC") social distancing requirements. (Id. ¶ 28.) Global
Impact continued to require paid staff members to be present at
clinics that remained open in order to "engage in prayer walking
as well as sidewalk counseling." (Id. ¶ 29.)

On March 25, 2020, Guilford County issued a Stay-at-Home
Order ("Order") that went into effect on March 27, 2020, (Ex. 7

-3-

("March 25 Order") (Doc. 39-7) at 10), with the stated purpose
of curbing the local effects of the global public health crisis
created by the COVID-19 pandemic, (see id. at 1-2). The March 25
Order was set to expire on April 16, 2020. (Id. at 9.) Guilford
County subsequently issued two revisions on March 30, 2020,
(Ex. 1 ("March 30 Order") (Doc. 39-1) at 14), and on April 10,
2020, (Ex. 6 ("April 10 Order") (Doc. 39-6) at 14), but all
versions maintained an expiration date of April 16, 2020, (March
25 Order (Doc. 39-7) at 9; March 30 Order (Doc. 39-1) at 14;
April 10 Order (Doc. 39-6) at 14).[2]

The Order prohibited mass gatherings, certain activities
from occurring within Guilford County, and travel in Guilford
County for certain purposes. (April 10 Order (Doc. 39-6) at 1-
15.) A mass gathering is "any event or convening that brings
together more than ten (10) persons in a single room or single
space at the same time." (Id. at 4.) The Order's express intent
was "to ensure that the maximum number of people self-isolate in
their places of residence to the maximum extent feasible, while
enabling essential services to continue to slow the spread of
COVID-19 to the maximum extent possible." (Id. at 3.)

---

[2] The March 25 Order, March 30 Order, and April 10 Order are
identical in all material respects. Accordingly, this court will
cite to the April 10 Order unless otherwise noted.

-4-

The Order permitted travel into Guildford County for "Essential Activities," which was defined as "[f]or health and safety," "[f]or necessary supplies and services," "[f]or outdoor activity," "[f]or certain types of work," and "[t]o take care of others." (Id. at 5-6.) Outdoor activity was defined "by way of example and without limitation" to include "walking, hiking, golfing, running, cycling, or using the greenways." (Id. at 6.)

### 3. Citations and Arrests of Plaintiffs

On March 28, 2020, Global Impact staff members were at an abortion clinic in Greensboro "to provide social services," and "to walk and pray on a public sidewalk," and Global Impact's lawyer, Osterreich, was there to provide legal services. (Am. Compl. (Doc. 39) ¶¶ 49-50, 55.) Greensboro Police Department ("GPD") officers stopped and issued citations to Global Impact staff members Burner, Reeder, Ubinas, and Global Impact's attorney Oesterreich for violation of the Order. (Id. ¶ 49.) Following their citations, Oesterreich, Reeder, and Ubinas were arrested. (Id. ¶¶ 52, 59.) Plaintiffs allege they were following the Order's social distancing guidelines as well as the other guidelines in the Order at the time they were stopped, cited, and arrested. (Id. ¶ 56.)

On March 30, 2020, Global Impact staff members and volunteers were at the same abortion clinic to provide

-5-

"charitable outreach services and ministry," and "Osterreich was present to provide legal services." (Id. ¶¶ 62, 66–67.) Plaintiffs were walking and praying on the public sidewalk near the clinic when they were stopped by a GPD officer. (Id. ¶¶ 68, 71.) Plaintiffs Burner, Gonzalez, Reeder, Oesterreich, Stokes, Whittier, and McAtee were issued citations for violating the Order. (Id. ¶ 77.) Subsequently, Burner, Gonzalez, Reeder, Oesterreich, Stokes, Whittier, and McAtee were arrested. (Id. ¶ 78.) Plaintiffs allege they were following the Order's social distancing guidelines as well as the other guidelines in the Order at the time they were stopped, cited, and arrested. (Id. ¶ 72.) Plaintiffs allege they suffered damages because of the events that occurred on March 28 and March 30. (Id. ¶¶ 85–114.)

On April 4, 2020, Plaintiff Stokes was at the clinic "orally praying and peacefully walking on the public sidewalk," when three GPD officers stopped Stokes. (Id. ¶¶ 115–16.) According to the Amended Complaint, one of the officers "told Pastor Stokes that the Order prohibits him from walking and praying because 'praying is a form of demonstration' that is 'outside the realm of the stay-at home order.'" (Id. ¶ 116.) The officers told Stokes that that he was "not just like anybody else" because he was walking "with a purpose of praying for the abortion clinic, which is a form of demonstration." (Id. ¶ 117

-6-

(internal quotation marks omitted).) As this discussion occurred, another man walked past Stokes and the officers, and the officers explained that man would not be subject to arrest "because the other man was carrying grocery bags and presumably not praying." (Id. ¶ 119.) Plaintiff Stokes alleges he suffered nominal damages because of the lost opportunity to exercise his First Amendment rights. (Id. ¶ 122.)

## B. **Procedural Background**

Plaintiffs filed their Amended Complaint bringing eight claims against City and Guilford County.[3] (Am. Compl. (Doc. 39) ¶¶ 150-264.) City moved to dismiss Plaintiffs' Amended Complaint, (Def. City of Greensboro Mot. to Dismiss Pls.' Am. Compl. ("Mot. to Dismiss") (Doc. 41)), and filed a brief in support of its motion, (Br. in Supp. of Def. City of Greensboro's Mot. to Dismiss Pls.' Am. Compl. ("Def.'s Br.") (Doc. 42)). Plaintiffs responded, (Pls.' Resp. in Opp'n to Def. City of Greensboro's Mot. to Dismiss ("Pls.' Resp.") (Doc. 50)), and City replied, (Reply Br. in Supp. of Def. City of Greensboro's Mot. to Dismiss Pls.' Am. Compl. ("Def.'s Reply") (Doc. 56)). This matter is ripe for adjudication.

---

[3] Guildford County was later dismissed with prejudice from this matter. (Doc. 54.)

## II.  <u>**STANDARD OF REVIEW**</u>

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556-57). When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. <u>Id.</u> Further, this court liberally construes "the complaint, including all reasonable inferences therefrom, . . . in the plaintiff's favor." <u>Estate of Williams-Moore v. All. One Receivables Mgmt., Inc.</u>, 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.

Defendants also challenge Global Impact's standing under Federal Rule of Civil Procedure 12(b)(1). (Def.'s Br. (Doc. 42) at 10, 30-34.) The Supreme Court has articulated three elements

-8-

a plaintiff must satisfy to have standing: (1) a "plaintiff must have suffered 'an injury in fact'"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be 'likely' the injury will be 'redressed by a favorable decision.'" <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. at 560-61 (1992) (quoting <u>Allen v. Wright</u>, 468 U.S. 737, 756 (1984); <u>Simon v. E. Ky. Welfare Rights Org.</u>, 426 U.S. 26, 38, 43 (1975)). "The party invoking federal jurisdiction bears the burden of establishing these elements." <u>Id.</u> at 561. "When . . . a defendant challenges the existence of subject matter jurisdiction . . . the plaintiff bears the burden of proving . . . [standing] by a preponderance of the evidence." <u>United States ex rel. Vuyyuru v. Jadhav</u>, 555 F.3d 337, 347 (4th Cir. 2009). When a defendant asserts that the allegations in the complaint, taken as true, are insufficient to establish subject-matter jurisdiction, the court affords a plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration," taking the facts as true and denying the Rule 12(b)(1) motion "if the complaint alleges sufficient facts to invoke subject-matter jurisdiction." <u>Kerns v. United States</u>, 585 F.3d 187, 192 (4th Cir. 2009) (internal quotation marks omitted) (quoting <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982)). If

-9-

subject matter jurisdiction is lacking, the complaint must be dismissed. Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006).

## III. ANALYSIS

Because standing is a dispositive issue, this court addresses standing first before addressing City's motion on the merits.

### A.  Global Impact's Standing[4]

Initially, this court considers whether Plaintiff Global Impact has standing to bring the asserted claims in the Amended Complaint. "Standing is a threshold jurisdictional question which ensures that a suit is a case or controversy appropriate for the exercise of the courts' judicial powers." Pye v. United States, 269 F.3d 459, 466 (4th Cir. 2001).

City argues that Global Impact lacks organizational standing because it "has failed to allege that it suffered any injury in fact." (Def.'s Br. (Doc. 42) at 30–34.) "An organization claiming standing in its own right must adequately allege that . . . it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." S. Walk at Broadlands Homeowner Ass'n v. OpenBand at Broadlands, LLC, 713 F.3d 175, 182 (4th

---

[4] Global Impact concedes it does not have associational standing. (Pls.' Resp. (Doc. 50) at 27 n.14.) Therefore, only Global Impact's organizational standing is at issue.

Cir. 2013) (internal quotation marks omitted) (quoting <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 180 (2000)).

> With respect to an injury-in-fact, the first and foremost of standing's three elements, an organization that seeks to do no more than vindicate its own value preferences through the judicial process cannot establish standing. An organization . . . however, may suffer an injury in fact when a defendant's actions impede its efforts to carry out its mission.

<u>PETA, Inc. v. Tri-State Zoological Park of W. Md., Inc.</u>, 843 F. App'x 493, 495 (4th Cir. 2021) (cleaned up).

In <u>Havens Realty Corp. v. Coleman</u>, an organization dedicated to achieving equal opportunity in housing sued an apartment complex company that allegedly engaged in unlawful racial steering practices. 455 U.S. 363, 368–69 (1982). The Supreme Court held the organization sufficiently alleged organizational standing because the organization alleged that it "ha[d] been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services," and that it had "devote[d] significant resources to identify and counteract the . . . racially discriminatory steering practices." <u>Id.</u> at 379 (internal quotation marks omitted). The Supreme Court reasoned that "[i]f . . . [the] steering practices ha[d] perceptibly impaired [the organization's] ability to provide counseling and

-11-

referral services for low-and moderate-income homeseekers, there c[ould] be no question that [it] ha[d] suffered [an] injury in fact" because "[s]uch concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitute[d] far more than simply a setback to the organization's abstract social interests." Id.

After Havens Realty, the Fourth Circuit decided Lane v. Holder and held that an organization dedicated to the right to keep and bear arms did not sufficiently allege standing to sue the Attorney General of the United States based on an allegedly unconstitutional statute restricting interstate transfers of certain firearms. 703 F.3d 668, 670-71, 674-75 (4th Cir. 2012). The plaintiff alleged it was injured because "its resources [we]re taxed by inquiries into the operation and consequences of interstate handgun transfer provisions." Id. at 675 (internal quotation marks omitted). The Fourth Circuit rejected the plaintiff's effort to analogize its position to the plaintiff in Havens Realty, reasoning that expense to the organization was not an "injury in fact" because "although a diversion of resources might harm the organization by reducing the funds available for other purposes, it results not from any actions taken by the defendant, but rather from the organization's own budgetary choices." Id. (cleaned up). The Fourth Circuit "has

-12-

reaffirmed" in subsequent decisions "that a plaintiff has suffered an organizational injury if the challenged policy or practice frustrated both its purpose and caused a drain on its resources." PETA, 843 F. App'x at 496 (citing S. Walk, 713 F.3d at 183).

This court finds that Global Impact has sufficiently alleged facts to support a finding of organizational standing. Global Impact alleges that its "reputation[] in the community [was] harmed" as well as its "reputation[] . . . with Love Life's partner churches." (Am. Compl. (Doc. 39) ¶¶ 86–87.) It further alleges that because of City's actions, "some of Love Life's partner churches ended their partnership with Plaintiff Individuals and Love Life," (id. ¶ 88), and Plaintiffs have "suffered nominal and compensatory damages because of [City's] actions," (id. ¶ 148). City argues that the allegation that some of Global Impact's partner churches ended their partnership is an injury to its organizational purpose, which cannot on its own provide a basis for standing. (Def.'s Reply (Doc. 56) at 18.) This court disagrees.

Like the plaintiff organization in Havens Realty, the Amended Complaint alleges that Global Impact's ability to provide services in line with its purpose has been impaired. Global Impact has lost partnerships with churches due to City's

-13-

actions, (Am. Compl. (Doc. 39) ¶ 88), which is a "concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—[and is] . . . far more than simply a setback to the organization's abstract social interests." Havens Realty, 455 U.S. at 379. Unlike the plaintiff organization in Lane, whose alleged injury was due to the organization's own budgetary resources, Lane, 703 F.3d at 675, the injury to Global Impact is allegedly a result of City's actions, not Global Impact's actions, (Am. Compl. (Doc. 39) ¶ 148). Because Global Impact has sufficiently alleged it suffered injury in fact, this court finds that Global Impact has organizational standing.

B. **First Amendment Claims**

Plaintiffs allege that City violated their First Amendment rights to free speech, free exercise, and expressive association. (Id. ¶¶ 169, 184, 215.)

City argues that ordinary constitutional analysis should not apply because "constitutional analysis is different in a state of emergency." (Def.'s Br. (Doc. 42) at 12, 16.) This court finds the cases relied on by City in support of applying rational basis review are unpersuasive. For one, many of the cases are detrimental to City's position because the court ultimately struck down the restriction at issue as violating a

-14-

constitutional right. See O'Connor v. Donaldson, 422 U.S. 563, 575–76 (1975) (holding involuntary commitment of Donaldson violated his constitutional right to liberty); Aptheker v. Sec'y of State, 378 U.S. 500, 502–03, 505 (1964) (holding law denying passports to members of Communist party violated the constitutional right to travel); Edmond v. Goldsmith, 183 F.3d 659, 666 (7th Cir. 1999) (issuing preliminary injunction enjoining the city's practice of using roadblocks to catch drug offenders because it violated the Fourth Amendment). Additionally, many of the cases cited by City do not deal with First Amendment challenges. See Smith v. Avino, 91 F.3d 105, 107 (11th Cir. 1996) (city's curfew imposed after hurricane challenged for vagueness and overbreadth); Murphy v. Palmer, Civ. Action No.: 14-cv-6896(FLW)(DEA), 2017 WL 2364195, at *1, *6 (D.N.J. May 31, 2017) (alleging Fourth Amendment claim in the wake of a hurricane).

City places particular emphasis on United States v. Chalk, 441 F.2d 1277 (4th Cir. 1971). (See Def.'s Br. (Doc. 42) at 13–14.) But that case did not deal with the right to free speech, free exercise, or freedom of association; it dealt with a curfew imposed by the Asheville mayor in response to civil unrest and the legality of that curfew and a search of a car incident to a traffic stop. Chalk, 441 F.2d at 1278–80. The facts of this case

-15-

differ greatly. Here, Plaintiffs' First Amendment rights were allegedly infringed while exercising their sincerely held religious beliefs on public sidewalks, (see Am. Compl. (Doc. 39) ¶¶ 22-23, 29), a forum afforded "a special position in terms of First Amendment protection," United States v. Grace, 461 U.S. 171, 180 (1983), as opposed to a generally applicable nighttime curfew in Chalk. Moreover, Plaintiffs were prohibited from walking and praying on the public sidewalks at all hours of the day, (see April 10 Order (Doc. 39-6)); in Chalk, the curfew was from 9 p.m. to 6 a.m., 441 F.2d at 1278. Although a nighttime curfew may have an "incidental effect on First Amendment rights," id. at 1280, an all-hours prohibition on demonstrating in a public forum is an absolute ban.[5]

Similarly, City's reliance on Jacobson v. Massachusetts, 197 U.S. 11 (1905), does not persuade this court to apply

---

[5] City also relies on ACLU of W. Tenn. v. Chandler, 458 F. Supp. 456 (W.D. Tenn. 1978), in which Memphis declared a state of emergency and imposed a nighttime curfew. Id. at 458. However, unlike in Chandler, where the curfew had an incidental impact on First Amendment rights by limiting the time and place people could protest, the Order here has a significant impact on Plaintiffs' First Amendment rights by completely barring them from demonstrating. Moreover, Chandler was a preliminary injunction case, where the standard is the degree of "likelihood of success on the merits," id., at 458-59, and this case is before this court on a motion to dismiss, where the standard is "plausibility," Iqbal, 556 U.S. at 678. Because "[t]he plausibility standard is not akin to a 'probability requirement,'" id. (quoting Twombly, 550 U.S. at 556), this court is not persuaded to deviate from normal tiers of scrutiny.

rational basis. "Jacobson pre-dated the modern tiers of scrutiny," and dealt with alleged violations of "an implied 'substantive due process' right to 'bodily integrity,'" and was a different kind of restriction. Roman Cath. Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring). Jacobson does not stand for a different type of constitutional analysis during a pandemic. In fact, Jacobson "essentially applied rational basis review" because the vaccine mandate did not infringe any right guaranteed by the Constitution. Id. at 70-71. But a restriction on speech in a public forum does affect fundamental rights, and therefore Jacobson does not mandate applying rational basis review to this case.

City cites several cases that purport to apply a lower standard of review to restrictions on constitutional rights during COVID-19. (See Def.'s Br. (Doc. 42) at 20.) Defendant first cites Stewart v. Justice, 518 F. Supp. 3d 911 (S.D.W. Va. 2021). In Stewart, the district court found there was "no invasion of fundamental constitutional rights," noting that refusing to wear a mask is not sufficiently expressive conduct. Id. at 918-19. This case differs from Stewart because Plaintiffs allege they were engaged in expressive conduct, including "praying, counseling, and speaking their desired messages in accordance with their organizational mission and outreach

-17-

services," (Am. Compl. (Doc. 39) ¶ 174), facts which City does not dispute at this stage in the proceedings. Plaintiffs further allege City prevented Plaintiffs from walking, praying, and speaking, while allowing other individuals to walk for purposes other than praying. (See id. ¶ 119.)[6]

Defendant's reliance on Big Tyme Investments, LLC v. Edwards, 985 F.3d 456 (5th Cir. 2021), is similarly misplaced. That case dealt with whether the Louisiana Governor's differential treatment of bar owners violated the Equal Protection Clause. Id. at 460. Because Big Time Investments did not deal with First Amendment freedom of speech rights, this court is not persuaded to deviate from the usual constitutional tiers of scrutiny. Additionally, Defendant cites Kentucky v. Beshear, 981 F.3d 505 (6th Cir. 2020). That case dealt with a free exercise of religion challenge, id. at 507, which is a different analysis than a freedom of speech challenge.[7]

---

[6] Even assuming, arguendo, that this court's analysis of the applicable tiers of scrutiny, and resulting analysis is incorrect, this court would still deny the motion to dismiss on this issue. Plaintiffs allege that similar conduct by other individuals not in furtherance of their First Amendment rights was permitted by City, thereby raising plausible questions as to the relationship between the ban and emergency measures.

[7] As discussed infra Section III.B.2, this court finds the Order does not violate the Free Exercise Clause of the First Amendment.

Finally, Defendant's reliance on Talleywhacker v. Cooper is not persuasive because that case dealt with adult entertainment businesses, which are "entitled to some, albeit limited, protection under the First Amendment." 465 F. Supp. 3d 523, 541 (E.D.N.C. 2020). This case presents a very different factual scenario because although "nude dancing . . . falls only within the outer ambit of the First Amendment's protection," City of Erie v. Pap's A.M., 529 U.S. 277, 289 (2000), demonstrating on a public street is well-protected by the First Amendment. Hill v. Colorado, 530 U.S. 703, 721 (2000) (describing public streets as "quintessential public forums for free speech" (internal quotation marks omitted)).

In sum, this court is unpersuaded by the cases relied on by Defendant in support of its argument that constitutional analysis is different in an emergency. But even if a pandemic or other emergency could support a different constitutional analysis other than the normal tiers of scrutiny, the "[g]overnment is not free to disregard the First Amendment in times of crisis." Roman Cath. Diocese of Brooklyn, 141 S. Ct. at 69 (Gorsuch, J., concurring). The First Amendment "prohibits government officials from treating religious exercises worse than comparable secular activities, unless they are pursuing a compelling interest and using the least restrictive means

-19-

available." Id. Thus, even if a less robust constitutional analysis is warranted during an emergency, the First Amendment still requires states to treat constitutionally protected activities at least as well as those that are not. See id. at 70.

### 1. **Freedom of Speech (Claim Two)**

Restrictions on speech are subject either to strict scrutiny or intermediate scrutiny under the First Amendment. Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 642 (1994). Content- and viewpoint-based restrictions are subject to strict scrutiny, Reed v. Town of Gilbert, 576 U.S. 155, 163-64 (2015), while content-neutral laws are subject to intermediate scrutiny, see Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). Laws withstand intermediate scrutiny if "they are narrowly tailored to serve a significant governmental interest" and "leave open ample alternative channels for communication of the information." McCullen v. Coakley, 573 U.S. 464, 477 (2014) (internal quotation marks omitted) (quoting Ward, 491 U.S. at 791). Laws withstand rational basis review "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993). A court must "consider whether a regulation of speech 'on its face' draws distinctions based on

the message a speaker conveys." <u>Reed</u>, 576 U.S. at 163 (quoting <u>Sorrell v. IMS Health, Inc.</u>, 564 U.S. 552, 564 (2011)); <u>Cahaly v. LaRosa</u>, 796 F.3d 399, 405 (4th Cir. 2015) (inquiring whether the restriction "makes content distinctions on its face").

This court finds the Order is a permissible content-neutral regulation on its face. Looking at the face of the restriction at issue, it "restrict[s] movement of all individuals living within Guilford County . . . and restrict[s] all non-essential gatherings . . . and all non-essential travel." (April 10 Order (Doc. 39-1) at 1 (uppercase omitted).) The Order seeks to prevent the spread of COVID-19, a purpose unrelated to speech. <u>See</u> <u>Talleywhacker</u>, 465 F. Supp. 3d at 541. Significantly, the Order "does not draw distinctions based on the content of the speech or any message expressed. It does not protect specific categories of speech while prohibiting others." <u>Mey v. Venture Data, LLC</u>, 245 F. Supp. 3d 771, 792 (N.D.W. Va. 2017) (finding the TCPA to be a content-neutral restriction on speech).

Whatever level of scrutiny is applied to City's order, this court finds that Plaintiffs have alleged a plausible freedom of speech claim. Plaintiffs allege that they were engaged in constitutionally protected activity when they were walking, praying, and counseling outside of the abortion clinic. (Am. Compl. (Doc. 39) ¶¶ 55, 68, 116-18.) Paradoxically, Plaintiffs

allegedly violated the Order by praying and walking outside of the abortion clinic while otherwise in compliance with the Order's social distancing requirements, (see id. ¶¶ 56, 72), but individuals walking and talking on a greenway would not violate the Order, (see April 10 Order (Doc. 39-6) at 6). Indeed, Plaintiffs allege that while Stokes was being stopped on April 4, 2020, another individual was walking on the same sidewalk, but he was not subject to arrest because he was not praying. (Id. ¶ 119 ("When another man then walked past the GPD officers and Pastor Stokes on the same public walkway, Sergeant Goodykoontz explained that while Pastor Stokes was subject to arrest under the Order for walking there, the other man would not be—because the other man was carrying grocery bags and presumably not praying.").) Even though Plaintiffs were engaged in the same activity as other people—that is, walking outside— Plaintiffs allege City officials told Plaintiffs they "were 'not just like anybody else' because they were walking down the street 'with a purpose of praying for the abortion clinic, which is a form of demonstration." (Id. ¶ 117.)

Taking those allegations as true, Plaintiffs have plausibly alleged that City treated the same activity "worse," Roman Cath. Diocese of Brooklyn, 141 S. Ct. at 69 (Gorsuch, J., concurring), when that activity is protected by the Constitution than when it

is not. Even in times of emergency, the First Amendment does not allow that disparate treatment to occur. See id. Accordingly, this court will deny City's Motion to Dismiss Plaintiffs' freedom of speech claim.

### 2. Free Exercise of Religion (Claim One)

"The Free Exercise Clause of the First Amendment forbids the adoption of laws designed to suppress religious beliefs or practices." Morrison v. Garraghty, 239 F.3d 648, 656 (4th Cir. 2001). This prohibition encompasses policies, like the one in this case, "that impose a substantial burden on a[n] [individual's] right to practice his religion." Wall v. Wade, 741 F.3d 492, 498 (4th Cir. 2014). However, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 531 (1993). Laws are not neutral and generally applicable if they "single out the religious for disfavored treatment." Trinity Lutheran Church of Columbia, Inc. v. Comer, 137 S. Ct. 2012, 2020 (2017). The Supreme Court has consistently rejected free exercise challenges when the laws have been neutral and generally applicable. See Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439 (1988) (holding that the

-23-

Free Exercise Clause did not prohibit the Government from timber harvesting or road construction on a particular tract of federal land, even though the Government's action would obstruct the religious practice of several Native American Tribes that held certain sites on the tract to be sacred); Emp. Div., Dep't of Human Res. of Ore. V. Smith, 494 U.S. 872, 890 (1990), superseded by statute, Religious Freedom Restoration Act of 1993, Pub. L. No. 103-141, 107 Stat. 1488, as recognized in Tanzin v. Tanvir, 141 S. Ct. 486, 489 (2020) (rejecting a free exercise claim brough by two members of a Native American church denied unemployment benefits because they had violated Oregon's drug laws by ingesting peyote for sacramental purposes). But see, e.g., Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n, 138 S. Ct. 1719, 1731–32 (2018) (holding that a facially neutral law and generally applicable violates a person's right to the free exercise of religion where there is evidence that the law was motivated by hostility to certain religious beliefs and has been used to target certain religious beliefs).

This court finds the Order to be neutral and generally applicable without regard to religion. The Order does not treat religious activity worse than secular activity. (See April 10 Order (Doc. 39-6).) Unlike New York's stay-at-home order, which limited occupancy of houses or worship, churches, and synagogues

-24-

but not hardware stores, acupuncturists, and liquor stores,
Roman Cath. Diocese of Brooklyn, 141 S. Ct. at 69 (Gorsuch, J.,
concurring), City's Order makes no such distinctions. The Order
in this case was enacted "to ensure that the maximum number of
people self-isolate in their places of residence to the maximum
extent feasible, while enabling essential services to continue
to slow the spread of COVID-19 to the maximum extent possible."
(April 10 Order (Doc. 39-6) at 3.) This case can be
distinguished from recent cases analyzing Free Exercise Clause
challenges to COVID-19 orders because the Order does not
distinguish between religious activities and secular activities.
For example, in Berean Baptist Church v. Cooper, the district
court, applying strict scrutiny, struck down the order because
it was more restrictive of religious gatherings than secular
gatherings. 460 F. Supp. 3d 651, 662-63 (E.D.N.C. 2020); see
also Tandon v. Newsom, 141 S. Ct. 1294, 1297 (2021) (enjoining
California's stay-at-home order where the order "treat[ed] some
comparable secular activities more favorably than at-home
religious exercise, [by] permitting hair salons, retail stores,
personal care services, movie theaters, private suites at
sporting events and concerts, and indoor restaurants to bring
together more than three households at a time"). Taking the
facts in the light most favorable to Plaintiffs, this court

-25-

finds the Order is a neutral law of generally applicability and therefore not violative of the First Amendment's Free Exercise Clause.

Although neutral laws of general applicability that target religious freedom violate the First Amendment unless those laws can withstand strict scrutiny, see Masterpiece Cakeshop, 138 S. Ct. at 1731–32, Plaintiffs' allegations that City "targeted" Plaintiffs, (Am. Compl. (Doc. 39) ¶¶ 155, 167–68), is nothing more than a conclusory statement, which is insufficient to survive a motion to dismiss, Iqbal, 556 U.S. at 678; Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (finding that when considering a Rule 12 motion to dismiss, a court need not accept "unwarranted deductions" or "sweeping legal conclusions cast in the form of factual allegations" (internal quotation marks omitted) (quoting 5A Charles A. Wright & B. Arthur R. Miller, Federal Practice and Procedure § 1357, 317–18 (2d ed. 1990)). Plaintiffs have alleged no facts to support their conclusory statements that City targeted Plaintiffs. Therefore, this court will grant City's Motion to Dismiss Plaintiffs' free exercise of religion claim.

### 3. Freedom of Association (Claim Four)

The Supreme Court "has 'long understood as implicit in the right to engage in activities protected by the First Amendment a

corresponding right to associate with others.'" <u>Ams. for Prosperity Found. v. Bonta</u>, 141 S. Ct. 2373, 2382 (2021) (quoting <u>Roberts v. U.S. Jaycees</u>, 468 U.S. 609, 622 (1984)). The First Amendment protects two kinds of association: intimate associations and expressive associations—the associations one forms to speak, petition, or otherwise express a point of view. <u>See</u> <u>Leaders of a Beautiful Struggle v. Balt. Police Dep't</u>, 979 F.3d 219, 232 (4th Cir. 2020). Plaintiffs allege that Global Impact "is an expressive association because people with like-minded beliefs . . . join together to assist and serve women in the Greensboro area and to express their religious beliefs," and that they engage in expressive association when they gather and pray, and when they "partner with each other and partner with women seeking information and counsel." (Am. Compl. (Doc. 39) ¶¶ 202, 204-05.) Plaintiffs allege City violated their right to expressive association because City's Order prevented them from exercising their right to speak and pray freely. (<u>Id.</u> ¶ 211.)

Courts typically evaluate freedom of speech, assembly, association, and petition claims under the same analytical framework. <u>See, e.g.</u>, <u>Clark v. Cmty. for Creative Non-Violence</u>, 468 U.S. 288, 293 (1984). While content-based restrictions are subject to strict scrutiny, content-neutral restrictions are subject to intermediate scrutiny, <u>Ward</u>, 491 U.S. at 791.

-27-

This court has found the Order to be a content-neutral restriction of speech. Supra Section III.B.1. Because freedom of speech and freedom of association are evaluated under the same analytical framework, this court will apply its analysis of the Order's restriction on freedom of speech to freedom of association. Important to the freedom of association analysis, which by its definition requires two or more people, Plaintiffs have alleged the Order does not leave open alternate channels of communication. (Am. Compl. (Doc. 39) ¶ 214.) Plaintiffs allege that City had less restrictive means to achieve its interest in protecting the public from COVID-19, "including by permitting Plaintiffs to associate in accordance with the Order's Social Distancing Requirements and prohibition on mass gatherings." (Id.) Yet, Plaintiffs were completely prevented from associating together to express their beliefs. Cf. Beahn v. Gayles, No. GJH-20-2239, 2021 WL 3172272, at *10–11 (D. Md. July 26, 2021) (granting motion to dismiss the plaintiffs' freedom of assembly claim where the restriction on in-person school "left open ample alternate channels for communication—namely, virtual instruction").

Under any tier of constitutional scrutiny, the Order cannot be considered constitutional when it prevents Plaintiffs from associating in compliance with the Order's mass gathering

-28-

restrictions but allows others who are not engaged in the same expressive conduct as Plaintiffs to associate. Plaintiffs allege that they "were at least six feet apart, were not gathered with more than 10 people, and were abiding by all of the Order's other Social Distancing Requirements, including carrying hand sanitizer." (Am. Compl. (Doc. 39) ¶ 56; see also April 10 Order (Doc. 39-6) at 4.) Yet they were cited and arrested, while others were not. (Am. Compl. (Doc. 39) ¶ 119 (describing how City officials explained that praying while walking could subject one to arrest under the Order, while just walking would not).) This court thus finds Plaintiffs have sufficiently alleged a plausible freedom of association claim. Accordingly, this court will deny City's Motion to Dismiss Plaintiffs' freedom of association claim.

###    C.   **Procedural Due Process Claim (Claim Three)**

Plaintiffs allege that City violated their Fourteenth Amendment right to procedural due process. (Id. ¶ 198.) Specifically, Plaintiffs allege the vagueness of the Order and the lack of procedural safeguards violated the Fourteenth Amendment right to procedural due process. (Id. ¶ 187.)

In its Motion to Dismiss, City "move[d] to dismiss Plaintiffs' Amended Complaint." (Mot. to Dismiss (Doc. 41) at 1.) "City relie[d] on and incorporate[d] by reference its brief

filed contemporaneously" with its motion. (Id. at 2.) However, City's brief lacks any argument regarding why this court should dismiss Plaintiffs' procedural due process claim. (See Def.'s Br. (Doc. 42).)

This district's local rules require all motions to "state with particularity the grounds" on which the party is moving, and "cite any statute or rule of procedure relied upon." LR 7.3(b). Moreover, all briefs shall contain the party's "argument, which shall refer to all statutes, rules and authorities relied upon." Id. 7.2(a). When the defendant fails to provide argument in its brief regarding why a court should dismiss the plaintiff's claim, the defendant is deemed to have waived that argument. See McClain v. Causey, 1:20-cv-695, 2021 WL 111496, at *2 (M.D.N.C. Jan. 12, 2021) (holding that the defendants abandoned their defenses to personal jurisdiction where defendants did not make any argument "beyond a short reference to the standard"); Stocker v. Cloninger Ford, Inc., 342 F. Supp. 2d 410, 413 (M.D.N.C. 2004) (denying motion to dismiss where the defendant alluded to the plaintiff's failure to meet ERISA's administrative exhaustion requirement in the defendant's answer, but "filed no brief arguing [that] point"); Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC, No. 1:12CV27, 2014 WL 2559285, at *2 n.4 (M.D.N.C. June 6,

2014) (denying the movants relief where they "fail[ed] to
develop any argument or cite any authority in support of [their]
request").

Given that City provided no argument to support this court
dismissing Plaintiffs' procedural due process claim, this court
will deny City's Motion to Dismiss Plaintiffs' Fourteenth
Amendment procedural due process claim and allow that claim to
proceed.

### D.  **Equal Protection Clause (Claim Five)**

Plaintiffs allege that City violated their Fourteenth
Amendment right to equal protection. (Am. Compl. (Doc. 39)
¶ 225.)

The Fourteenth Amendment prevents any state from "deny[ing]
to any person within its jurisdiction the equal protection of
the laws." U.S. Const. amend XIV. § 1. "In evaluating an equal
protection challenge to a rule, courts must first determine the
standard of review to apply. If the rule neither infringes a
fundamental right nor disadvantages a suspect class, courts
apply rational basis review." Nat'l Ass'n for the Advancement of
Multijurisdiction Practice v. Lynch, 826 F.3d 191, 196 (4th Cir.
2016) (citing Beach Commc'ns, Inc., 508 U.S. at 313).

Here, Plaintiffs allege the Order impinges on their First
Amendment rights. (Am. Compl. (Doc. 39) ¶¶ 169, 184, 222.)

-31-

Freedom of speech and religion are fundamental rights. McIntyre

v. Ohio Elections Comm'n, 514 U.S. 334, 336 n.1 (1995); Bob

Jones Univ. v. United States, 461 U.S. 574, 603 (1983).

"[I]nterference with a fundamental right warrants the

application of strict scrutiny." Bostic v. Schaefer, 760 F.3d

352, 375 (4th Cir. 2014). Strict scrutiny requires the

governmental regulation be narrowly tailored to serve a

compelling interest. See Village of Schaumburg v. Citizens for a

Better Env't, 444 U.S. 620, 637 (1980) ("The Village may serve

its legitimate interests, but it must do so by narrowly drawn

regulations designed to serve those interests without

unnecessarily interfering with First Amendment freedoms.").

This court finds that although City has a compelling

interest, the Order was not narrowly tailored. Although

protecting the public from COVID-19 is a compelling governmental

interest, the Order, and City's enforcement of the Order, is not

narrowly tailored because, as the Amended Complaint alleges,

City "treated Love Life, its staff and volunteers, and Plaintiff

Individuals, differently than other persons engaging in the same

activity." (Am. Compl. (Doc. 39) ¶ 221.) Specifically,

"prohibiting prayer and religious speech while walking, while at

the same time permitting walking in the same location and manner

by those who are not praying or engaging in religious speech,"

(id. ¶ 223), is not narrowly tailored to City's interests in
stopping the spread of COVID-19. Otherwise, City presumably
would have stopped everyone from walking and talking outside,
but the Complaint reflects City did not do that. Plaintiffs
allege City allowed another man to walk past City police
officers on the same public walkway as Plaintiffs "because the
other man was carrying grocery bags and presumably not praying."
(Id. ¶ 119.) Moreover, the Order itself explicitly allows for
"outdoor activity" including, "without limitation, walking,
hiking, golfing, running, cycling, or using the greenways."
(April 10 Order (Doc. 39-6) at 6.) For these reasons, Plaintiffs
plausibly allege the Order cannot withstand strict scrutiny.
This court finds Plaintiffs have sufficiently alleged a
plausible claim that City violated their equal protection
rights. Accordingly, this court will deny City's Motion to
Dismiss Plaintiff's equal protection claim.

**E.    Fourth Amendment Claims**

Plaintiffs allege that City violated their Fourth Amendment
rights by unlawfully stopping, arresting, and detaining
Plaintiffs. (Am. Compl. (Doc. 39) ¶¶ 235, 251, 263.)

Plaintiffs assert that "GPD officers could not have had a
reasonable suspicion that Plaintiff Individuals were violating
the Order because Plaintiff individuals were performing

-33-

'essential services' as defined under the Order." (Id. ¶ 230.)
Regarding Plaintiff Stokes, because he was "merely walking down
the sidewalk while praying as a form of 'outdoor activity' as
defined under the Order," the officers similarly could not have
had a reasonable suspicion he was violating the Order. (Id.
¶ 257.) City counters that because "Plaintiffs were allegedly
walking and praying . . . in a group . . . outside a clinic
where it was customary for individuals to congregate to
'counsel' those entering the clinic," GPD officers "had
reasonable suspicion to stop them for a violation of the Order."
(Def.'s Reply (Doc. 56) at 17.) Under Plaintiffs' interpretation
of the Order as alleged in the Amended Complaint, they were not
violating the Order because they were performing essential
services or outdoor activity, and therefore the officers had no
reasonable basis to suspect them of violating the Order. Under
City's interpretation of the Order, Plaintiffs presumably were
not performing essential services or permissible outdoor
activity and therefore were violating the Order by gathering and
walking outside of the clinic.

Reasonable suspicion is "'a particularized and objective
basis' for suspecting the person stopped of criminal activity."
Ornelas v. United States, 517 U.S. 690, 696 (1996) (quoting
United States v. Cortez, 449 U.S. 411, 417 (1981)). At the

-34-

motion to dismiss stage, this court does not resolve factual disputes. See <u>Bosiger v. U.S. Airways</u>, 510 F.3d 442, 450 (4th Cir. 2007). "The reasonable suspicion inquiry is fact-intensive." <u>United States v. Hernandez-Mendez</u>, 626 F.3d 203, 208 (4th Cir. 2010). Because this case is at the motion to dismiss stage, and because this court must conduct a "fact-intensive" inquiry to determine whether City's officers had reasonable suspicion, this court declines to dismiss Plaintiff's Fourth Amendment claims for unlawful stops and will instead defer a final ruling on this issue to trial pursuant to Federal Rule of Civil Procedure 12(i).

For similar reasons, this court will also decline to dismiss Plaintiff's Fourth Amendment claim for unlawful arrests. Whether Plaintiffs were unlawfully stopped and arrested is better left for determination when there is a more developed factual record before this court. Accordingly, City's Motion to Dismiss Plaintiffs' Fourth Amendment claim for unlawful arrests will be deferred to trial pursuant to Federal Rule of Civil Procedure 12(i).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, this court will grant in part and deny in part City's Motion to Dismiss, (Doc. 41). This court will grant the motion as to Plaintiffs' free exercise of

-35-

religion claim (Claim One). This court will decline to dismiss Plaintiffs' freedom of speech claim (Claim Two), freedom of association claim (Claim Four), procedural due process claim (Claim Three), equal protection claim (Claim Five), and Fourth Amendment claims (Claims Six, Seven, and Eight).

**IT IS THEREFORE ORDERED** that City's Motion to Dismiss, (Doc. 41), is **GRANTED IN PART AND DENIED IN PART.** The Motion is **GRANTED** as to Plaintiffs' free exercise of religion claim (Claim One). This claim is **DISMISSED.** The Motion is **DENIED** as to Plaintiffs' other claims.

This the 16th day of March, 2022.

_____
United States District Judge

-36-